**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────

QWENTON THOMPSON,

                            Plaintiff,                    1:24-cv-439
                                                          (ECC/MJK)
v.

SCHENECTADY CITY SCHOOL DISTRICT,

                            Defendant.

────────────────────────────

Qwenton Thompson, *pro se Plaintiff*
Scott P. Quesnel, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Qwenton Thompson brought this action pro se against Defendant Schenectady

City School District alleging various claims under Title VII, 42 U.S.C. § 1981, and New York law.

After review under 28 U.S.C. § 1915 by United States Magistrate Judge Mitchell J. Katz, Plaintiff

filed an Amended Complaint.  *See* Dkt. No. 4; Amended Complaint (Am. Compl.), Dkt. No. 9.

Presently before the Court is Defendant's motion to dismiss the Amended Complaint for failure to

state a claim and for lack of subject matter jurisdiction.  Dkt. No. 19.  The motion is fully briefed,

Dkt. Nos. 19-1, 22, 23.  For the following reasons, Defendant's motion is granted in part and

denied in part.

### I.    FACTS[1]

Plaintiff, a Black man, was hired by Defendant in 2018 to work as a "Cleaner."  Am

───────────────

[1] These facts are drawn from the Amended Complaint.  The Court assumes the truth of, and draws
reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*,
952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009).

Compl. at 3, 15 (¶¶ 4, 6xx).[2]  In February 2022, Defendant changed its pay scale, and Plaintiff was "downgraded in steps to an entry level salary."  *Id.* at 3,4 (¶¶ 6a, 6d).  Plaintiff submitted a grievance concerning his downgrade through his union, and Defendant denied the grievance in May 2022.  Am. Compl. at 4–5 (¶¶ 6d–6g); Dkt. No. 9-3.

Defendant "accepted [a] bid for a higher position" from a "Caucasian" woman in the same position, who was a "new hire" with less seniority than Plaintiff, and Plaintiff was not notified so that he could "participate in this bid."  Am. Compl. at 4 (¶ 6b).  This employee, who was in a romantic relationship with Plaintiff's supervisor, was allowed to use her time on the job as personal time and take a 30-day leave of absence without permission.  *Id.*

In May 2022, Plaintiff was told to leave a break room while "fellow Caucasian employees" were eating.  Am. Compl. at 5 (¶ 6h).  On May 24, 2022, Plaintiff submitted a grievance because of "Defendant's skipping him for overtime pay for the last six months."  *Id.* at 6 (¶ 6i).  "[E]mployees other than Plaintiff's color, race or ethnicity were properly compensated for overtime hours."  *Id.*

On June 10, 2022, Plaintiff filed a grievance because Defendant was "continuing to deny him overtime pay he earned" and he was "being skipped for overtime."  Am. Compl. at 7 (¶ 6l).  In the grievance, Plaintiff complained that "overtime is being offered and worked by members with less seniority" and "overtime has not been offered to me."  Dkt. No. 9-6.  Defendant "establish[ed] an 'overtime sign-up sheet' as a condition for receiving overtime pay." Am. Compl. at 7–8 (¶ 6m).  Plaintiff "signed this overtime sheet," but he was still "skipped for overtime."  *Id.*

In June 2022, an assistant principal for Defendant stopped Plaintiff twice when he was

---

[2] Citations to page numbers refer to the page numbers created by the Court's electronic filing system.

leaving work.  Am. Compl. at 8 (¶ 6n).  The assistant principal waited for Plaintiff to leave "to

harass and target" Plaintiff "by stopping" Plaintiff's car and "getting into an argument with"

Plaintiff's driver while allowing other people of "other ethnicit[ies] such as Caucasian[3] people" to

pass "without any judgment."  *Id.*; *see also id.* at 13 (¶ 6aa) (referring to a video documenting the

assistant principal throwing himself at "plaintiff's drivers [sic] vehicle" and stating that he was

told to look for a "Red Lincoln," the make and model of Plaintiff's grandmother's car).  "The

plaintiff driver [sic] made" the assistant principal aware of this by saying  "you didnt [sic] stop the

Caucasian lady before me leaving."  *Id.*  at 8 (¶ 6n).

On July 14, 2022, Defendant sent a letter to Plaintiff directing him to attend a meeting with

Defendant's labor counsel and the chief human resources officer "to discuss issues related to [his]

performance as an employee."  Am. Compl. at 10 (¶ 6p); Dkt. No. 9-17.  Before this meeting,

Plaintiff "appeared in front of the of [Defendant's] board of education" and  "explain[ed] all of the

discriminatory conduct that occurred throughout the work year."  Am. Compl. at 11 (¶ 6s).  On

July 22, 2022, Defendant held a hearing and informed Plaintiff that it was seeking his termination.

Am. Compl. at 11 (¶ 6t); Dkt. No. 9-20 at 1.  The same day, a union labor relations specialist

served Defendant with papers "alleging racial discrimination and retaliation."  Am. Compl. at 11

(¶ 6t).

In September 2022, Plaintiff filed a complaint with the New York State Division of Human

Rights (NYSDHR) alleging "an unlawful discriminatory practice relating to employment because

of race/color" and "discrimination/retaliation."  Dkt. No. 1-1 at 1.  In October 2022, Plaintiff met

with Defendant's board of education and repeated his complaints, including racial discrimination

---

[3] Plaintiff spells "Caucasian" inconsistently in his submissions.  This decision uses the correct
spelling when quoting from Plaintiff's submissions rather than the incorrect spelling.

and retaliation.  Am. Compl. at 12 (¶ 6w).

In the summer of 2023 after union arbitration, Plaintiff was reinstated to his job, but he was not offered back pay or past overtime.  Am. Compl. at 13–14 (¶ 6aa).  On August 9, 2023, Defendant assigned Plaintiff to a new building and shift and told him that if he did not return to work at the specified date and time, then he "would be written up and disciplined."  *Id.* at 14 (¶ 6aa).  Plaintiff did not report as scheduled because of the ongoing NYSDHR discrimination investigation and his  unresolved complaints regarding pay and overtime.  *Id.* at 14–15; Dkt. No. 9-14.  As a result, he was "written up."  Am. Compl. at 15 (¶ 6aa).

In February 2024, NYSDHR notified Plaintiff that its investigation had concluded with a finding of no probable cause, and that Plaintiff had a right to have the United States Equal Employment Opportunity Commission (EEOC) review its decision.  *See* Dkt. No. 1-1 at 1, 3.  On March 12, 2024, the EEOC issued Plaintiff a right-to-sue letter.  Dkt. No. 5-1.[4]  Plaintiff commenced this action four days later.  *See* Dkt. No. 1.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although a complaint need not contain

---

[4] "[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" for purposes of a motion to dismiss.  *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citation omitted).  The NYSDHR letter was attached to the initial complaint, Dkt. No. 1-1, and the Plaintiff provided the EEOC letter when he requested time to file an amended complaint, Dkt. No. 5-1.  In light of Plaintiff's pro se status, the Clerk is respectfully directed to attach Dkt. Nos. 1-1 and 5-1 to Plaintiff's Amended Complaint.  Accordingly, the EEOC letter, the NYSDRH letter, and the exhibits attached to the Amended Complaint may be considered for purposes of this motion.

detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where "a plaintiff is proceeding pro se, the complaint must be considered under a more lenient standard than that accorded formal pleadings drafted by lawyers." *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (citation omitted). The complaint must also be construed liberally "to raise the strongest arguments that it suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020) (citation omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citation omitted).

## III.    DISCUSSION

### A.    Title VII Claims

The Amended Complaint asserts claims of racial discrimination, harassment, and retaliation under Title VII. Am. Compl. at 17–20.

#### 1.    Timeliness and Exhaustion

Defendant argues that Plaintiff's Title VII claims should be dismissed because Plaintiff did not (1) "sufficiently allege that he exhausted his administrative remedies and received a right-to-sue letter," or, in the alternative, (2) "commence his suit under Title VII within 90 days of receiving

a right-to-sue letter from the EEOC." Defendant's Memorandum of Law (Def. Mem.), Dkt. No. 19-1 at 15–18. Plaintiff responds with a detailed timeline of this lawsuit. Plaintiff's Memorandum of Law (Pl. Mem.), Dkt. No. 22 at 15–18, 22. Contrary to Defendant's argument, Plaintiff is not required to plead exhaustion, and he timely filed this lawsuit.

The "burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). As a result, Plaintiff was not required to plead exhaustion. *See Hardaway*, 879 F.3d at 491 (concluding that "the district court erroneously dismissed [the complaint] by holding that the exhaustion requirement is a pleading requirement incumbent on a Title VII plaintiff, rather than an affirmative defense").

Title VII requires that any lawsuit be brought "within 90 days after the issuance of a right-to-sue letter . . . 'against the respondent named in the charge.'" *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984) (quoting 42 U.S.C. § 2000e–5(f)(1)). This requirement is treated as a statute of limitations subject to equitable tolling. *See Ayala v. U.S. Postal Serv.*, 727 F. App'x 15, 17 (2d Cir. 2018) (summary order); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (noting the Supreme Court's "policy of treating Title VII time limits not as jurisdictional predicates, but as limitations periods subject to equitable tolling"); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006) (noting that a different timeliness requirement of Title VII "is analogous to a statute of limitations," and "as such is meant to put the adversary on notice to defend within a specified period, and to promote the right to be free of stale claims.") (citations omitted).

Here, Plaintiff's suit is timely. Although his initial complaint appeared to rely on 42 U.S.C. § 1983—and did not label itself as a Title VII claim, *see* Dkt. No. 1 at 3—it is clear from its

allegations that Plaintiff's suit "sound[ed] in employment discrimination pursuant to Title VII." *See* Dkt. No. 4 at 3. The complaint incorporated the NYSDHR letter explaining the basis for Plaintiff's suit, and the complaint referred to "[r]acial [d]iscrimination" at work, "[h]ostile work environment" through retaliation. Dkt. No. 1 at 4. Therefore, when Plaintiff sued just four days after the right-to-sue letter was issued, Defendant was put on notice under the timeliness requirements of Title VII.

Accordingly, neither of Defendant's arguments is persuasive, and the motion to dismiss Plaintiff's Title VII claims on these bases is denied.

### 2. Discrimination

Defendant argues that Plaintiff's Title VII racial discrimination claim should be dismissed because Plaintiff did not plead that he suffered an adverse employment action motivated by his race. Def. Mem. at 18–20. Plaintiff responds by pointing to his allegations that he was treated differently than "Caucasians" and "other ethnicities" in his position. Pl. Mem. at 22–25.

To "defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). A plaintiff may prove discrimination indirectly by "showing circumstances giving rise to an inference of discrimination." *Id.*

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, . . . a material loss of benefits . . . or other indices unique to a particular situation." *Id.*

Here, Plaintiff sufficiently alleges discrimination under Title VII to survive Defendant's motion. Plaintiff alleged that he was denied overtime, a material loss of benefits, while employees of "other color, race or ethnicity" received overtime. Further, Plaintiff alleged other times when he was treated differently than "Caucasian" employees including when (1) a "Caucasian" employee with less seniority received a job that he could not compete for, (2) he was told to leave a break room while "fellow Caucasian employees" were eating, and (3) an assistant principal stopped Plaintiff's car in the school parking lot when he was leaving, while a "Caucasian" woman was not stopped. Therefore, the Amended Complaint states a claim for racial discrimination under Title VII, and the motion to dismiss is denied as to this claim.

### 3.    Harassment

The Court construes Plaintiff's references to harassment in his Amended Complaint as a hostile work environment claim.[5] Defendant argues that any such claim should be dismissed because the "conduct that Plaintiff views to be offensive was not sufficiently frequent or severe" to plead a hostile work environment claim, and, even it if were, Plaintiff has not alleged any facts connecting any hostility to his race. Def. Mem. at 20–21. Plaintiff responds that when he was treated differently because of his race, as detailed in his allegations, that created a "stressful and abusive work environment." Pl. Mem. at 23–25.

"To show a hostile work environment under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015)

---

[5] The Amended Complaint has a single cause of action for "Discrimination and Harassment in Violation of Title VII." Am. Compl. at 18. In this decision, the Court will treat and refer to this claim as a hostile work environment claim consistent with the briefing.

(citation omitted). The "conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321 (citation omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (citation omitted). When deciding whether a plaintiff has shown a hostile work environment, a court must "consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

Here, Plaintiff has not alleged a sufficiently continuous and pervasive environment of racial discrimination to survive a motion to dismiss. Plaintiff alleges that he was treated differently than "Caucasian" employees and employees of "other ethnicities," but even considering the totality of these allegations, and not considering them in isolation, they were not so severe "as to have altered the conditions of" his employment. *Littlejohn*, 795 F.3d at 321. Accordingly, Defendant's motion to dismiss is granted as to this claim.

### 4.    Retaliation

Defendant argues that Plaintiff's Title VII retaliation claim should be dismissed because Plaintiff has failed to allege that "but-for his internal complaints, [Defendant] would not have taken the actions which Plaintiff claims to be adverse." Def. Mem. at 21–22. Plaintiff responds that he was terminated "shortly after" making protected complaints of racial discrimination and has therefore alleged a Title VII retaliation claim. Pl. Mem. at 26–27.

To allege a Title VII retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any" employment practice forbidden by Title VII, *Vega*, 801 F.3d at 90 (citation

omitted), or "otherwise made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing," *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (cleaned up).

"[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. A "plaintiff must plausibly plead a connection between the act and his engagement in protected activity," and a "retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.*

"An employee's complaint may qualify as protected activity" when "the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). However, a plaintiff's belief is not reasonable "simply because he . . . complains of something that appears to be discrimination in some form." *Id.* at 15.

Here, the earliest protected activity alleged by Plaintiff was in June 2022 when Plaintiff told an assistant principal that the assistant principal had not stopped a "Caucasian" woman. Plaintiff also alleges that one month later, he was notified that there were issues with his performance. He further alleges that he was terminated the same day that he filed his NYSDHR complaint and a union labor relations specialist served Defendant with papers "alleging racial discrimination and retaliation." Drawing all reasonable inferences from these allegations as required, Plaintiff has sufficiently alleged that Defendant terminated Plaintiff with a retaliatory purpose. Therefore, the motion to dismiss is denied as to this claim.

**B.     § 1981 Claims**

The Amended Complaint alleges § 1981 claims that mirror Plaintiff's Title VII claims. Am. Compl. at 15–17. Defendant argues that these claims should be dismissed for the same

reasons that Plaintiff's Title VII claims should be dismissed.  Def. Mem. at 23.  Plaintiff does not respond to this argument.

"The same elements constitute a claim for employment discrimination under . . . § 1981 as constitute a claim under Title VII."  *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (quoting *White v. Eastman Kodak Co.*, 368 Fed. App'x. 200, 202 n.1 (2d Cir. 2010) (summary order)).  Similarly, the requirements for a hostile work environment claim are the same for § 1981 as Title VII.  *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015).  Finally, a § 1981 retaliation is "subject to the same standard[]" as a Title VII retaliation claim. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023).

Given that Plaintiff has sufficiently alleged Title VII racial discrimination and retaliation claims, his § 1981 claims are also sufficient.  Given that Plaintiff has not sufficiently alleged Title VII a hostile work environment claim, his § 1981 hostile work environment claim is also not sufficient.  Therefore, the motion to dismiss is granted as to Plaintiff's § 1981 harassment claim, but denied as to the other § 1981 claims.

## C.    New York Law Claims

Finally, Plaintiff raises a series of claims under New York law.  For the following reasons, they are dismissed.

### 1.    New York State Humans Rights Law and New York City Human Rights Law Claims

Plaintiff raises claims under New York State Human Rights Law, N. Y. Exec. L. §§ 290 *et seq.*, and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8–107 *et seq.*, that mirror his claims under federal law.  Am. Compl. at 20–25.  Defendant argues that these claims should be dismissed under the doctrine of election of remedies, because Plaintiff first brought a complaint with NYSDHR.  Def. Mem. at 9–11.  Plaintiff responds with a detailed timeline of the events

leading to this lawsuit, including a confirmation that he filed his NYSDHR complaint before he commenced this lawsuit.  Pl. Mem. at 15–18.  Plaintiff's state law claims are dismissed because he elected to pursue his claims through NYSDHR before filing this lawsuit.

Under New York law, "the remedies of administrative review through the Human Rights Division or judicial review are *mutually exclusive*." *Moodie v. Fed. Rsrv. Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995) (citation omitted).  Therefore, a lawsuit under either New York State Human Rights Law or New York City Human Rights Law must be dismissed if a plaintiff first lodges a complaint with NYSDHR.  *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002)).  "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Id.* (citing *Moodie*, 58 F.3d at 882).  A plaintiff's claims are barred "if they are based on the same operative events he presented to [NYSDHR]." *Id.* at 189.

"Courts recognize two exceptions to the doctrine of election of remedies." *Williams v. City of New York*, 916 F. Supp. 2d 517, 522 (S.D.N.Y. 2013).  "First, where a complaint filed with the administrative agency is dismissed for administrative convenience rather than on the merits, a plaintiff is not barred from filing a lawsuit in federal court." *Id.* (citation omitted).  Second, "when a claim is filed directly with the EEOC rather than with [NYSDHR], and is only thereafter filed with [NYSDHR] by the EEOC." *Id.* (citation omitted).

Here, Plaintiff first filed his complaint with NYSDHR.  Neither exception to the doctrine of remedies applies because NYSDHR did not dismiss his complaint for administrative convenience, and Plaintiff did not file a complaint with the EEOC before filing his NYSDHR complaint.  The doctrine therefore applies, and the Court lacks jurisdiction over Plaintiff's claims

under the New York State and New York City Human Rights Laws.  These claims are dismissed.

### 2.    Tort Claims

Defendant argues that Plaintiff's negligent hiring, retention, and supervision claims, Am. Compl. at 25–26, because Plaintiff did not comply with the notice requirements for tort claims against a school district required by N.Y. Educ. L. § 3813.  Def. Mem. 13–15.  Plaintiff responds by pointing to actions he took that would put Defendant on notice of his pay and discrimination complaints.  Pl. Mem. at 19–22.  This claim is dismissed because the Amended Complaint does not sufficiently plead compliance with § 3813.

New York Education Law § 3813(2) "mandates that actions 'founded upon tort' against any party enumerated in § 3813(1) comply with the notice of claim requirements set forth in New York General Municipal Law §§ 50-e and 50-i." *Pierro v. Hudson City Sch. Dist.*, No. 1:22-cv-670 (GLS/CFH), 2023 WL 2742245, at *4 (N.D.N.Y. Mar. 31, 2023).  Section 3813(1) applies to school districts, and a plaintiff must present a formal notice of a claim "founded in tort" within 90 days of when the underlying claim arises.  N.Y. Educ. L. § 3813(1); N.Y. Gen. Mun. L. §§ 50-e, 50-i.  In addition, both "[§§] 3813 and 50 require the plaintiff to plead on the face of the complaint that they complied with the notice of claim requirements and are strictly interpreted by New York courts, and no variation is tolerated." *Pierro*, 2023 WL 2742245, at *4 (citation omitted).  In certain circumstances, a charge filed with the EEOC might satisfy this requirement but "only in limited circumstances where the charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district, and is served within the statutory time period." *Id.*

Here, Plaintiff did not plead that he complied with N.Y. Educ. L. § 3813.  In addition, even assuming that Plaintiff's complaints to Defendant provided notice of any claims, they were limited to his issues about his pay, discrimination, and retaliation, and they did not address any tort claim.

Plaintiff's tort claims are therefore dismissed.

      **D.    Punitive Damages**

      Finally, Defendant argues that punitive damages are not permitted against a school district. Def. Mem. at 23–24. Plaintiff does not respond to this argument.

      There is "a large body of case law" that "punitive damages are unavailable against school districts." *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 606–07 (N.D.N.Y. 2016); *see Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 519 n.9 (E.D.N.Y. 2009) (collecting cases). Defendant's motion to dismiss Plaintiff's request for punitive damages is therefore granted.

      **E.    LEAVE TO AMEND**

      Although Plaintiff has not requested leave to amend, ordinarily, a court "'should not dismiss' a pro se complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118 (N.D.N.Y. 2023) (citations omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). But leave to amend is properly denied when the problem with a claim is substantive, and better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

      Here, plaintiff may re-plead all of his dismissed claims or requests except his claims under New York State Humans Rights Law and New York City Human Rights Law, and his request for punitive damages. Amendment to these claims would be futile because the doctrine of election of remedies deprives this Court of jurisdiction, and Defendant is immune from punitive damages.

      In any amended complaint, Plaintiff must clearly set forth the facts that give rise to his discrimination claim, including the dates, times, and places of the alleged underlying acts, and identify each individual who committed each alleged wrongful act, and should reattach all exhibits,

the NYSDHR letter and the EEOC letter.  Any such amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original[] and renders it of no legal effect.") (citation omitted).

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Defendant's motion to dismiss, Dkt. No. 19, is **GRANTED IN PART** and **DENIED IN PART;** and it is further

**ORDERED** that Defendant's motion to dismiss for failure to state a claim is **GRANTED** as to the New York tort claims and the harassment claims under federal law; and it is further

**ORDERED** that Defendant's motion to dismiss for lack of jurisdiction is **GRANTED** as to the New York State Humans Rights Law and New York City Human Rights Law claims and the request for punitive damages; and it is further

**ORDERED** that Defendant's motion to dismiss is **DENIED** in all other respects;

**ORDERED** that the Clerk attach Dkt. Nos. 1-1 and 5-1 to Plaintiff's Amended Complaint, Dkt. No. 9, *nunc pro tunc*; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 25, 2025

_____
Elizabeth C. Coombe
U.S. District Judge

15